**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael DeBOER, Defendant–Appellant.**

**No. 91–2013.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1992.

Decided June 9, 1992.

Before: NELSON and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Appellant, Michael DeBoer (defendant), appealed the district court's judgment finding him guilty of one count of conspiracy to distribute and aid and abet in the distribution of Tussend, a Schedule III controlled substance pursuant to 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

On October 25, 1990, the grand jury indicted the defendant on one count of conspiracy to distribute the cough syrup Tussend, a Schedule III controlled substance. The defendant worked at a drug store which was owned and operated by him and his parents. He functioned as both a manager and a pharmacy technician. His pharmaceutical duties included packaging the cough syrup, Tussend, into measured containers for sale to the public, as well as ordering drugs from wholesale suppliers. Occasionally, he filled prescriptions for customers when the pharmacists were either ill or late for work.

A jury trial commenced on June 17, 1991, in which the defendant was to be tried with three co-defendants. After the jury was selected, but before the commencement of the trial, two of the co-defendants pleaded guilty and the charges against a third defendant were dismissed. Before the government commenced its presentation of evidence against the defendant on June 18, 1991, without defense objection, the court instructed the jury not to draw any inferences from the absence of the remaining co-defendants from the trial. The instruction was legally proper and correct.

At trial, employees, including a registered pharmacist, testified that Dr. Anthony Bergren (Bergren), a practicing medical doctor, prescribed eighty percent of the store's controlled substance prescriptions. They further testified that they were aware through customers that many pharmacists and pharmacies in the vicinity and elsewhere refused to honor Bergren's prescriptions. Furthermore, relief pharmacist, Floyd Rademacher (Rademacher), tes-

Richard S. Murray, Asst. U.S. Atty. (argued), John A. Smietanka, U.S. Atty., Office of the U.S. Atty., Grand Rapids, Mich., for U.S.

Norman C. Halbower (argued), Muskegon, Mich., for DeBoer.

tified that the pharmacy's practices regarding Tussend prescriptions were outside the usual course of professional conduct. Specifically, he testified that Tussend was a cough syrup rarely used by physicians because it was three times more powerful than a codeine cough medicine. He stated that a normal pharmacy would fill three or four prescriptions for the drug per week during peak flu season as compared to the eleven or more Tussend prescriptions per day that were filled at defendant's pharmacy.

Further, the United States offered undisputed evidence that defendant's drug store received quantity shipments of Tussend from wholesalers from December, 1986 through November, 1988. The evidence disclosed that during this two year period, the said pharmacy received 3,902 sixteen ounce bottles of Tussend from three wholesalers, enough Tussend to fill 21 prescriptions every day for two years.

The United States also offered into evidence all the controlled substance prescriptions filled at the pharmacy during 1987, as well as summaries of that evidence. DEA agent, Karen Mysliewic (Mysliewic) testified over objection that from her calculations defendant's pharmacy filled an average of eleven Tussend prescriptions per day. The court overruled the objection and, as a cautionary measure, instructed the jury not to treat summaries as evidence and to disregard the summaries if they did not accurately reflect the facts and figures developed by the evidence.

Following the close of trial, the court requested that counsel jointly draft jury instructions. When the court charged the jury, it read 21 U.S.C. § 846 and § 841(a)(1) into the record, as well as a definition of "to distribute," and explained the pharmacist/physician exemption from liability and the elements of a conspiracy.

Thereafter, the court dismissed the jury to deliberate, without discharging the alternate juror. Three minutes after the jury retired to commence deliberations, the judge dismissed the alternate juror. The defendant did not object to the court's oversight, nor did he request that the judge interrogate the jurors to determine whether the alternate juror participated in or influenced any deliberations or whether deliberations had even commenced.

■ In his first assignment of error, the defendant contended that the court committed plain error in its instruction to the jury concerning the "good faith" defense. In the instant action, the judge reviewed with the jury the provisions of 21 U.S.C. § 841(a)(1) and further instructed them that physicians and pharmacists were exempt from liability if they distributed controlled substances in the usual course of business pursuant to 21 C.F.R. § 1306.04. These instructions effectively informed the jury of the good faith defense. *United States v. Carroll*, 518 F.2d 187 (6th Cir. 1975) (citing *White v. United States*, 399 F.2d 813, 816–17 (8th Cir.1968)). Accordingly, this assignment of error is without merit.

■ The defendant's second assignment of error is equally without merit. He argued that the court committed plain error when it did not instruct the jury on the elements of distribution of a controlled substance pursuant to 21 U.S.C. § 841(a)(1) and the burden of proof required for each element. However, this Circuit has recently decided an identical case in which it concluded that the district court's failure to instruct the jury on definitions of "distribution," "possession," and "intent" was not plain error when it gave detailed instructions on the elements of a conspiracy. *United States v. Gordon*, 936 F.2d 573 (6th Cir.1991). In the instant action, the district court read § 841(a)(1) to the jury and defined the term "distribute," in addition to identifying the elements of a conspiracy. Accordingly, the district court did not commit plain error in this instance.

■ The defendant next urged that he was denied his constitutional right to due process because the government failed to prove that he acted outside the scope of his profession. Crucial to defendant's reasoning is proof that the conduct proscribed in 21 U.S.C. § 841(a)(1) was void-for-vagueness. However, the language in § 841(a)(1)

and 21 C.F.R. § 1306.04(a) clearly defines the pharmacist's responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug. Furthermore, there was sufficient evidence in the record to prove that the defendant acted outside the scope of his profession. For example, Rademacher, a pharmacist of 34 years who was employed at the pharmacy, testified that a pharmacist had a responsibility not only to receive a prescription but to evaluate its propriety for the patient. Accordingly, he personally discouraged Bergren's patients from filling their prescriptions at the store. Moreover, other pharmacists in the community would not honor Bergren's prescriptions. The record also revealed that the pharmacy distributed abnormally large amounts of Tussend and that 80% of these prescriptions were written by Bergren. The evidence further disclosed that the defendant had personal knowledge of a letter received by his pharmacy from a supplier who refused to continue future shipments of controlled substances because of excessive orders which placed the supplier at risk for violating DEA regulations. Accordingly, there was sufficient evidence for the jury to conclude that the defendant acted beyond the scope of his profession.

■ The defendant further asserted that the trial court erred when it admitted summaries of the business records without describing or proving the methodology applied in developing the summaries in controversy. He suggested that the authenticity and accuracy of the summaries was based on hearsay, and therefore inadmissible. However, Fed.R.Evid. 1006, an exception to the hearsay rule, permits voluminous writings and records which cannot conveniently be examined in court to be condensed into summaries. *See United States v. Denton*, 556 F.2d 811, 816 (6th Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977). Furthermore, notwithstanding Rule 1006, this Circuit has traditionally endorsed summary evidence so long as an appropriate limiting instruction informs the jury that "the chart is not itself evidence but is only an aid in evaluating the evidence." *United States v.*

*Scales*, 594 F.2d 558, 563–64 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). Even though Mysliewic may not have had personal knowledge of the way bureau employees carried out her directive to select some days at random, she could testify that the summaries presented to the jury were summaries presented to her in response to her directions. Further, the district court properly instructed the jury that the summaries of these records were not evidence or proof of facts and could be disregarded if they did not correctly reflect the facts and figures shown by the evidence. Accordingly, this assignment of error is without merit.

■ Finally, the defendant contended that the court erred when it did not discharge the alternate juror immediately after the jurors had been dismissed to begin deliberations. Again, because the defendant failed to object at trial, he must prove that he was prejudiced by the court's oversight. *United States v. Sobamowo*, 892 F.2d 90 (D.C.Cir.1989), *cert. denied sub nom. Adair v. United States*, —— U.S. ——, 111 S.Ct. 78, 112 L.Ed.2d 51 (1990). Such an omission by the district court is harmless error where the record does not suggest that any improper communications occurred. *Id.* at 95–96.

In the instant action, the district court failed to discharge the alternate juror for approximately three minutes after the jury retired to select a foreman and commence its deliberations. The defendant did not object to the three minute delay, nor did he request the court to interrogate the jurors to determine if they in fact had commenced their deliberations before the alternate juror was dismissed. Since less than three minutes transpired, it is reasonable to conclude that this insignificant delay in discharging the alternate juror did not prejudice the outcome of the jury's deliberations. Accordingly, any error in this instance was at most harmless, and therefore this assignment of error is without merit.

The court has reviewed the remaining assignments of error and finds them to be equally misconceived.

After reviewing the record in its entirety, and the briefs and arguments of counsel, the district court's disposition is hereby AFFIRMED.